Good. And a Midstream Investment v. Citibank. It's $23,295. Thank you so much. Mishniger, am I pronouncing that right? I think you're exactly right, Your Honor. And you've reserved two minutes. Is that correct? I did. Thank you. May it please the Court, Sharon Schneier for the appellant's Citibank N.A., Citigroup, Inc. The District Court's order here compelling Citibank N.A. and Citigroup, Inc. to, quote, instruct its independent foreign subsidiary, Citibank-Gabon S.A., to restrain accounts of the Cameroon oil transportation company known as Katko, which are held entirely in Gabon, is unprecedented. It is undisputed here that the District Court did not have jurisdiction over either Citibank-Gabon or the Katko accounts. Can I ask what your clients are doing right now? I mean, presumably they complied with the injunction. Is that correct? They were ordered to provide an instruction to Citibank. Did they do that? They did do that. And if we vacate this injunction, what is your client going to tell Citigroup to do? Well, our client would tell Citibank-Gabon that the injunction is vacated, but it is up to Citibank-Gabon to decide how to handle the Katko accounts. It has already decided, given the dispute between the parties, it was going to only allow certain funds to go out of the account that's actually in the record. So if the injunction gets lifted and the Attorney General or the President of Chad walks into the bank and says, give me the $150 million, is Citibank-Gabon going to give it to him? Well, as the arbitrator found in this case, it is actually not Chad. It's a Cameroonian official is the one that has the authority. Okay, so if the Cameroonian official comes in and says, look, we've taken over this company. We now have a 51% ownership of Katko. I want you to wire the $150 million to Credit Suisse in Zurich or the Cayman Islands. What's Citibank-Gabon going to say? So obviously, I can't speak exactly for Citibank-Gabon, which is not a party in this proceeding. But I would note that these issues are being litigated in Gabon, these issues with all of the relevant parties there. Is this the ICC litigation? No, this is in addition to the ICC arbitration and just, Your Honor, since you brought it up, the ICC arbitrator denied Savannah's request for a freeze of the Katko accounts pending the arbitration. They obtained a freeze ex parte, but then when the matter went before the court with all of the parties there, the court said that the freeze was improperly granted in Gabon. That has been appealed. So right now in Gabon, this issue is being litigated. Do we have any sense about the time trajectory of the ICC proceeding? Are we talking about weeks or months or years? Is it possible to give us any guidance on that? I think the guidance that we have gotten and we put in our papers when we sought an expedited appeal here was about 22 months. Can I ask, did Katko make use of that provision to allow money for ordinary business expenses? Yes, it has been doing that. Okay, so they've been withdrawing and they've been paying for the pipeline's ordinary expenses? Yes, Your Honor. Okay. And why did you all come to us instead of filing a Rule 60 motion in the district court? I'm sorry, Your Honor? Why did you come to us instead of filing a Rule 60 motion after the freeze had been lifted? Because the order of the district court goes beyond just the freeze order that was in effect and goes on and says, and to preserve the status quo by maintaining the present freeze of the Katko account. Right, but the present freeze. Yeah. I mean, so that's part of the thing that's tricky. Like on one hand, the district court clearly contemplated something might change, but also thought that that might be actually consistent with comedy issues because it was present. So I'm just trying to make sure that it's supposed to be before us at the right time. So the way the district court wrote the order, let me go back a little bit. It's the last paragraph, A631 in the record. It says, accordingly, the responsible managers of respondent Citibank, N.A., and Citigroup, Inc. shall forthwith unequivocally instruct the managers of Citibank-Gabon S.A. to comply with the present order of the Libreville Commercial Court in Gabon. And then it says, and to preserve the status quo. Right, so as I read the order, it is in addition to what might happen in Gabon. It is ordering the instruction to freeze the account until the resolution of the dispute before the ICC. I want to switch to the jurisdictional issues. Do you have any case extending the separate entity rule outside the attachment context? I'm sorry, Your Honor? Do you have a case that you can point to us that extends the separate entity rule outside the attachment context? Well, Motorola itself was a restraining notice case. We also cite the Malibu case, which is a case involving, well, it's a similar request under 7502C. But this court, bear with me one second, you know, has made clear that, first of all, Okay, but Motorola is still an attachment case, right? I mean, my question is, do we have to create, maybe I asked my question too sideways. Do we have to create new law extending law that I think is indisputably in the attachment context to a situation like this one? I don't think so, Your Honor, because the separate entity rule, what it basically says is regardless of the basis for the court's jurisdiction, that when you are dealing with assets that are held overseas and you are effectuating those assets, be it a turnover, a restraint, or anything like that, you have to go to the jurisdiction where those assets are being held. So I think the law is pretty clear that if you want to restrain assets held in a foreign branch, then you have to go to that foreign branch. But even aside from the separate entity rule here, we're dealing with a separate subsidiary here. Well, right, but doesn't the fact that before any of this started you instructed them to have the freeze before they went to court, doesn't that kind of prove that you have the capacity to do so? We did not instruct, Citibank and Citigroup Inc. did not instruct Citibank to do anything before Judge Stanton issued this order. And the issue, and I know my colleagues talk about Citibank's ability to, quote, control Citibank-Gabon. That is not the standard for binding a separate subsidiary that is held overseas. This court has made clear on a number of occasions, which I'll just bear with you for a minute, that control is not the standard. In fact, this court in Universal Trading v. Credit Suisse, a case that Judge Parker was on, held that as our circuit has said, a parent company's control over a subsidiary is generally not enough to subject the subsidiary to suit in New York courts, and jurisdiction is only proper when the activities of the parent show a disregard for the separate corporate existence of the subsidiary. So if Judge Stanton had believed, based on believable evidence before him, that this money was going to disappear, go out of the back door, what, if anything, could he have done, and what, if anything, should he have done? Well, we submit, Your Honor, that given that this dispute has absolutely nothing to do with New York, the court doesn't have jurisdiction over the accounts. The court doesn't have jurisdiction over Citibank-Gabon. None of the parties, including Savannah, has anything to do with New York. There is no allegation here that this dispute has anything to do with New York. So your position is that this is simply a problem that his commission doesn't give him a warrant to deal with? Exactly, Your Honor. And, in fact, Savannah, I just want to point out, this was its third attempt to freeze these accounts, right? So it went to Gabon. It went to the ICC. The ICC, when it heard from all of the parties, and I just, you know, I don't want us to forget that this was essentially an ex parte application by Savannah. None of the parties who had been before the ICC, our arbitrator, who had been before the court in Gabon, who heard from all the parties and decided that they were not entitled to this relief, only then do they run to the court in New York with no evidence of, you know, dissipation, and once again the emergency arbitrator, who essentially was considering the same evidence that Judge Stanton was considering, found that evidence not to be persuasive at all. And I turn your attention there to page A112 through A113, where the arbitrator says, again, after hearing from all of the parties, apart from the fact that it does not appear to be based on a legal basis that is sufficiently serious, that was how the arbitrator viewed Savannah's argument that it would experience prejudice unless its application to freeze the accounts was granted. Thank you. Thank you so much. We'll hear from you on the bottle. May it please the court. My name is Kevin Reed with Quinn Emanuel on behalf of the Epilee. The challenged injunction in aid of arbitration was neither novel nor improper. The court correctly issued the injunction based on its finding that an order requiring Citibank to instruct its Gabonese subsidiary to freeze Kotko's accounts was necessary to preserve the efficacy of the arbitration. And in doing that, the court exercised its undisputed... To preserve what? The efficacy of the arbitration. But didn't this issue come before the arbitrator? The issue of preliminary relief went before the arbitrator. And they denied it. They didn't deny it, Your Honor. What he did was he ruled that he would not freeze the accounts. But he also ruled that the resolutions that gave the Chadian party's authority over the accounts were to be suspended. So in essence, the net of the ruling was that the Chadian authorities did not have access to the accounts because they did not have authority to act for Kotko. But the arbitration is efficacious. They're making rulings and they're dealing with the same subject matters, correct? The arbitration is certainly underway. I think what we argued to Judge Stanton and what he found in his discretion was that if further preliminary relief was not put into place, that between now and the actual arbitration hearing, there was a likelihood that the money would disappear, in which case there would be nothing really to arbitrate over because the company would be a shell. It's not a pitch that should have been made to the arbitrators. It was made to the arbitrator, Your Honor. Once they didn't give you all the relief you wanted, weren't you obligated to go back and follow? I don't know what the procedures are. Well, the problem— Let's rehear this. There's something you missed. Sure, Your Honor. As opposed to going across the ocean to another forum. The problem with that, Judge Parker, is that after the emergency arbitrator issued his ruling, the Chad parties said, well, we're just going to ignore this. We're not going to follow it. And, in fact, they didn't because although the resolutions that gave them authority to act on behalf of Kotko were suspended by the arbitral order, they then went to the Gabonese court in the name of Kotko to file a petition to remove the freeze. So I think having made clear that they're not going to file arbitral orders, at least not orders for preliminary relief, they left us no choice but to go to a court and to a party who would have to follow the order issued by the court. Putting aside your entitlement to an injunction, can you explain to me why you thought that the district court had jurisdiction? Sure, Your Honor. There's no question. Well, let me back up. The party that the court exercised jurisdiction over were Citibank and Citibank N.A. There's no question that the court has jurisdiction over those parties. They're based in New York, and they don't contest the court's jurisdiction. Right. Obviously, Citibank's here. Right. So what the court essentially did here was file a long line of cases beginning with the first National Bank case in 1965, which says that when the court has jurisdiction over a party, it can order the party to act or refrain from acting in places and with respect to property located outside of the jurisdiction. If it has dominion and control over it. But your adversaries argue that these are separate corporations governed by, you know, separate laws administered by separate corporate officers. That's what they argue. The evidence belies that, and I think that's what Judge Stanton relied on. To begin with, we know from history, in particular the situation that arose with Citibank's Mexican subsidiary, Banamex, that when a subsidiary goes off the reservation, the city has sufficient control to step in, because they told the SEC in that case, we're going to step in and remedy the corruption that's going on. In this case, we know- Wait, I'm sorry. Am I correct that when a citizen's lawsuit was filed that Citibank noted in their trial court preliminary injunction that they'd already instructed a freeze? They moved this court for expedition of the appeal, and in their papers they noted that they had instructed their subsidiary. So again, that was the next piece I was going to get to, which is they concede that they can issue those instructions. And presumably they didn't go and say to them, we're giving you this instruction, in quotes, follow it or not. So, I mean, it seems to me that there was some cleverness on the part of arguing for the injunction being worded the way that it was worded. I mean, it seems to me that somebody was trying to grab the separate entity role, focus on attachment, by making this not about money but about an instruction. I guess I have two questions. Can you tell me why you believe we should not extend the separate entity rule to non-attachment settings? Why don't you start there? Well, I guess I would start, and I hope this is answering your question. If not, please redirect me. But my first point would be the separate entity rule doesn't bind the federal court. It's New York law relating to limitations on CPLR enforcement provisions. I don't think that has anything to do with the district court's authority under Rule 65 to issue an injunction in aid of arbitration. So- No, you're right. But they're defending that way, and they're trying to say that it matters. So I'm trying to- Understood. But I don't want to get lost to the point that, to our understanding, the separate entity rule simply has no applicability here whatsoever, because New York common law can't limit a federal court's power to issue an injunction in aid of arbitration. That said, even if the separate entity rule were to apply, as Your Honor noted in your questioning, there is no New York case that extends it beyond the attachment context, and it would seem odd for the federal court to extend what is unquestionably a limitation on an ability to secure legitimately entitled assets beyond where the New York courts have taken it. And then the third point is the separate entity rule, as described in Motorola, applies only to attachments and applies only when you have bank branches involved. That was the basis on which they distinguished Kohler. Kohler did not involve bank branches but a separate subsidiary, which is precisely the case here. Can we move on to comedy? Your position, as I understand it, is that we can't or shouldn't afford any deference to the Gabon court system because of a military coup. That's a big pronouncement for us to make, and we don't have much record to make that on. The district court had even less of a record. What facts can you point to that justify not affording comedy? Your Honor, we did in our briefing point out that there are questions about the integrity and efficacy of the Gabonese court system right now. We do think those are worth taking account of. But I think the other point not to be lost here is that all that's at stake in the court proceedings, be it here or be it in Gabon, is a question of preliminary relief. The ultimate issue here, the ultimate dispute, is unquestionably going to be decided in arbitration, and so we think there's much less in the way of comedy concerns, where the only thing at issue is a preliminary injunction. And then you get to the question. Correct me if I'm wrong, but I sense that the back story that was present before Judge Stanton is whether this money is going to get dissipated. Am I missing something? That certainly was our animating concern. And so I think the relief was designed to ensure that didn't happen, because the arbitrator had put in place measures that should have stopped it by removing their authority to act on COTCO, and they ignored it. So from what I understand, you're saying that the dissipation factors into the preliminary injunction standard and it was less harm because the arbitration is going to do what it's going to do and they'll get their money if they're entitled to it. Right. This was not disposing of anybody's property. This was simply putting a status quo in place, maintaining the status quo, while the arbitrators sort out who controls this company. And that also goes to the indispensable party point. They say, how can you have this proceeding without COTCO present? But that just raises the question, well, who is COTCO? That's the underlying issue to be arbitrated. We say we control it. They say they control it. So to say COTCO should be here is inviting the court to have to decide the ultimate issue in the case, which we think has to be decided by the arbitrators. In effect, we want the court to act as COTCO's guardian ad litem, to hold everything in place while the arbitrators sort out who controls that company and its money. Unless the court has further questions, I'll cede my time. Thank you. Just a couple of points that I wanted to make on rebuttal here. First, in response to Judge Perez's concerns about the separate entity rule, I think the rule applies equally here as in all the other cases that have considered the separate entity rule. And just a quote from the Motorola case, which is the New York Court of Appeals, where they said the separate entity rule functions as a limiting principle in the context of international banking, particularly in situations involving attempts to restrain assets held in garnishing banks' foreign branches. In reaffirming the importance of the separate entity rule, the New York Court of Appeals noted its importance in shaping New York's status as the preeminent commercial and financial nerve center of the nation and the world. That's at 24 New York 3rd at 162. Essentially, what they're arguing here is notwithstanding the fact that this dispute has absolutely nothing to do with New York, notwithstanding the fact that we are dealing with a separate subsidiary in Gabon. And by the way, Savannah complains about Gabon. They chose to go and do business with COTCO. They knew as early as December 19, 2022, sorry, that there were issues with whether Chad would accept them as a partner, which again- What is the relationship, by the way, between Citibank Greenwich Avenue and Citibank Gabon? Could Citibank Gabon change its name to Chase Bank Gabon? It's a separate subsidiary of Citibank. It is incorporated under the laws of Gabon. It is regulated by the local regulators there. It manages the accounts in Gabon, including the COTCO accounts. Citibank N.A. does not manage those accounts. If there were rampant corruption in Citibank Gabon, could Citibank Greenwich Avenue do anything about it? I'm sorry, Your Honor, I didn't hear the last part. If there were rampant corruption in Citibank Gabon, could Citibank Greenwich Avenue do anything about it? Well, I guess the question is what? I mean, to- That was the question. Right. I think it would probably depend on the facts. There's been no evidence. It was a hypothetical. Yes. You know, I suppose it could do something. Exactly what? I wouldn't know, you know, right now without anything in the record. To Mr. Reed's point when he was talking about the subsidiary in Mexico, what Citibank did produce in that case were its own anti-money laundering records. It was not producing the records that belonged to the subsidiary. But the last point that I wanted to make is if this order is upheld, basically it is saying that you can avoid, a court can avoid the limits on its power. And it could expand federal jurisdiction to allow injunctions against any foreign entity or its assets over which the court admittedly did not have jurisdiction merely based upon the foreign entity having a parent company in the United States. I'm not aware of any case that endorses that view. Thank you. I take it under advisement. Thank you both. Thank you.